MARTIN v. BURFORD et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,712.

1. PUBLIC LANDS (§ 31*)—GENERAL LAND LAWS—APPLICATION TO ALASKA.

The general land laws are not applicable to Alaska, though the government recognizes and sanctions the actual possession and use of public land in Alaska by any Indian or other person as provided by Act Cong. May 17, 1884, c. 53, 23 Stat. 24, 26.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 31.*]

2. FRAUD (§ 23*)—FALSE REPRESENTATIONS—OWNERSHIP OF PROPERTY—DUTY OF PURCHASER.

Where defendants, in order to induce plaintiff to purchase an interest in a salmon packing outfit, falsely represented that the property consisted of a store building and site located in a place remote from that where the bargain was made, and practically inaccessible to plaintiff at the time, and defendants knew that plaintiff had no knowledge concerning such store building and site, except defendant's representations, plaintiff was not bound to exercise diligence to ascertain whether the representations were true or false, but was entitled to rely on the truth thereof and recover damages for their falsity.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 2023; Dec. Dig. § 23.*]

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

Action by J. W. Martin against George C. Burford and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

See, also, 176 Fed. 554, 100 C. C. A. 159.

---

E. M. Barnes, for plaintiff in error.

J. A. Hellenthal, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error was plaintiff in the court below, where by his complaint he sought to recover damages from the defendants in error, who were defendants there, resulting to him by reason of certain alleged false and fraudulent representations alleged to have been willfully and wantonly made by the defendants in a certain written instrument, which is set out at large in the complaint, and which is as follows:

"Know all men by these presents: That we, George C. Burford, and J. B. Caro & Company, of the town of Juneau, district of Alaska, for and in consideration of the sum of two thousand ($2,000.00) dollars, to us in hand paid, receipt whereof is hereby acknowledged, do hereby sell, transfer and assign unto J. W. Martin, of the town of Haines, Alaska, one-third (⅓) interest in and to the following described property, to wit:

"One scow 'Skagitt,' her lines, gear, etc.; one scow 'Volunteer,' her lines, gear, anchor, etc.; one log float; seine boat, and seines; seines; sale barrels, tierces; salmon troughs; and one store building and site situated at Farragut Bay, Alaska, together with all things pertaining to the fishing outfit known as the 'Arctic Fishing & Packing Company,' except the launch 'Tillicum,' which said launch is hereby expressly reserved.

"And the said parties of the first part hereby covenant that they are the owners and entitled to sell the said one-third interest of all of the above-described property, which said property is known as the said 'Arctic Fishing & Packing Company' and set over the same to the said second party.

"In testimony whereof we have hereunto set our hands and seals this 28th day of August, 1905.        George C. Burford. [Seal.]
"J. B. Caro & Co.      [Seal.]
"By Chas. E. Hooker.
"J. B. Caro.

"Signed, sealed, and delivered in presence of:
    "C. A. MacGregor.
    "L. B. Francis."

The complaint alleged, among other things, that the representation and covenant made by the defendants to the plaintiff to the effect that they then were the owners and entitled to sell the one-third interest in the store building and site situated at Farragut Bay were falsely and wantonly made in order to induce the plaintiff to make the payment of $2,000; that at no time did the defendants or either of them own that building or site, and that at no time were the defendants or either of them in the possession thereof or entitled to sell the building or site; that the representation and covenant as to their ownership of and right to sell the building and site were false and known by the defendants to be false at the time of making them, and were made with the intent to, and that they did, deceive the plaintiff; that the plaintiff was at the time wholly ignorant of the falsity of such representations and believed them to be true, and would not have paid the said sum of $2,000, or any part of it, but for such belief on his part, and that he had at the time no means of learning whether or not the said representations were true or false.

The answer filed by the defendant J. B. Caro, which by stipulation of counsel was made the answer of the other defendants also, put in

issue all the allegations in respect to the false and fraudulent representations made by them and as to the plaintiff being deceived by any such representations or damaged thereby, and alleged the fact to be that at the time of the transaction in question the defendant Burford was the owner of the fishing outfit described in the written instrument already set out, which the plaintiff calls a receipt and the defendants a bill of sale; that at that time Burford also had an option upon a certain store building and site at Farragut Bay, Alaska, and that he sold to the plaintiff Martin a one-third interest in the fishing outfit for $2,000, which the plaintiff agreed to pay, and at the same time Burford fully stated to the plaintiff the fact that he held an option upon the building and site and explained to him all the details in connection therewith, and agreed to exercise the option, and thereupon to convey to the plaintiff Martin a one-third interest therein as a part of the fishing outfit so purchased; that, upon the exercise by Burford of the right of purchase under the option, the plaintiff should become the owner of a one-third interest in the store building and site, and that Burford in no way concealed any of the facts from the plaintiff; that the firm of J. B. Caro & Co., which consisted of the defendants Hooker and Caro, was at one time interested in a copartnership business known as the "Arctic Fishing & Packing Company," and that the said defendant Hooker executed the instrument set out in the complaint for the firm of J. B. Caro & Co. "for no purpose except to convey to the plaintiff whatever interest said firm might still have in the outfit conveyed by reason of their former ownership and interest in and to the said Arctic Fishing & Packing Company, and for no other, further or different purpose whatsoever, all of which was well known and understood by the plaintiff at the time"; that the plaintiff agreed to pay for the one-third interest in the fishing outfit, store building, and site the sum of $2,000, to the defendant Burford, only a small portion of which the plaintiff paid in cash, and the balance in his promissory notes; that, because of the inaccessibility of Farragut Bay to the steamship companies, it became impossible to carry on the fishing business at that point, and that a short time after that fact became known to the parties the plaintiff and the defendant Burford entered by parol "into a new and different agreement and settlement concerning their several interests in said outfit," by which it was agreed that the Farragut Bay project should be abandoned, and that the business should be conducted in Wrangell Narrows; that the plaintiff should hold his one-third interest in the fishing outfit, with the exception of the store building and site at Farragut Bay, which store building and site were estimated by the plaintiff and the defendant Burford to be of no greater value than $250; that Burford should not exercise his option to purchase the building and site, and that the plaintiff should be relieved from the payment of one of the $500 notes given by him as a part of the original purchase price, which $500 note should be canceled and surrendered to the plaintiff; that the said note has never been presented by the defendant to the plaintiff, and that the defendant Burford was ready and willing to surrender the same to the plaintiff, and had not done so because the note had been left in Juneau and was not accessible at the time of such agreed cancellation. The

reply of the plaintiff put in issue the affirmative averments of the answer.

The plaintiff gave evidence tending to support the allegations of his complaint, and to show that the affirmative averments of the answer were not true; and there was contradictory evidence given on behalf of the defendants. The plaintiff also testified that merchandising was his regular business, and that the store building and site at Farragut Bay constituted the chief inducement to the purchase made by him.

The trial court instructed the jury, among other things, to the effect that:

"If the plaintiff was aware that the representations alleged to have been made to him were false, or if the representations and surrounding circumstances were such as ought to have aroused suspicion as to their truth in the mind of a person of ordinary business care and caution, then he cannot recover unless he exercised ordinary diligence in endeavoring to ascertain whether or not the representations were true or false; and if you find that the suspicions of an ordinarily prudent and careful business man would have been aroused thereby, and that plaintiff did not exercise such diligence, he cannot recover. And, before you return a verdict for the plaintiff in this cause, you must be satisfied by preponderance of the testimony as defined in these instructions, not only that the representations were of the character and made in the manner and with the intent as alleged, but that they were also made under such circumstances, and the conditions surrounding the transactions were such as to deceive a person acting with reasonable care and ordinary prudence and caution, and, in determining this question, you should consider all the circumstances under which the alleged representations appear from the evidence to have been made, and whether under such circumstances the representations were such as a person of common and ordinary prudence would or should have relied upon, or such as would be likely to deceive such a person."

This instruction, to which exception was taken by the plaintiff, cannot be sustained. The case shows that the situs of the property involved in the negotiation was in the sparsely settled territory of Alaska and remote from the place where the bargain was made, and practically inaccessible to the plaintiff at the time. According to the plaintiff's testimony, it was a very material fact whether or not the defendants had a store building and site at Farragut Bay, a third interest in which they were entitled to sell, for his testimony is to the effect that, being engaged in the merchandise business, the principal inducement to his purchase was the store building and site at Farragut Bay in which to carry on that business. The defendants must have known whether they had such a store building and site at Farragut Bay, and whether or not they were entitled to sell to the plaintiff a one-third interest therein, for although, as is shown in the opinion of this court in the case of Heckman v. Sutter, 128 Fed. 393, 63 C. C. A. 135, the general land laws of the United States are not applicable to that territory, and therefore, unless the building and site in question was a part of some mineral claim, the legal title to the land is still in the government, still Act Cong. May 17, 1884, c. 53, 23 Stat. 24, 26, recognized and sanctioned the actual possession and use by any Indian or other person of any land in Alaska, so that if it were true that the defendants, as represented by them in the written instrument in question, had one store building and site situate on Farragut Bay, they were legally entitled to sell to the plaintiff a one-third interest therein,

which would have passed to him the right of possession and occupancy of such undivided interest as against every one but the government. See Heckman v. Sutter, supra. The facts in relation to the defendants' possession and occupancy of the building and site and of their ownership as against every one but the government were, as has been stated, within the knowledge of the defendants, and, according to the plaintiff's testimony, were entirely unknown to him, nor, in the nature of things, could they have been known to him, since it does not appear that he had up to that time ever been at Farragut Bay, and the place, according to the record, was practically inaccessible to him. Certainly under such circumstances the plaintiff was entitled to rely upon the representations of such material facts alleged to have been made by the defendants. Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42, was a case brought to set aside a contract for fraud based upon certain false representations concerning a gold mine in Virginia. The contract was made in New York. The purchaser did not visit the mine, but relied upon the representations of the vendor, which were found to be false. In sustaining the action the court said:

"We think we may safely lay down the principle that whenever a sale is made, of property not present but at a remote distance, which the seller knows the purchaser has never seen, but which he buys upon the representation of the seller, relying upon its truth, then the representation in effect amounts to a warranty; at least, that the seller is bound to make good the representation."·

In the case of Lisney v. Selby, 2 Ld. Raym. 1118, Lord Holt laid down the doctrine:

"That a fraudulent misrepresentation or false assertion respecting a fact material to show the value of the land, by which the purchaser is injured, will subject the seller to an action for the deceit, though it was in the power of the purchaser to ascertain whether the representations were true or not."

In cases like the present, where material facts connected with the subject-matter within the knowledge of the vendor are alleged to have been falsely and fraudulently stated by him, the vendee who believes them to be true is entitled to rely upon such representations, even though other means be open to him to ascertain the truth. The vendee in such a case is, as said by the court in Wilson v. Higbee (C. C.) 62 Fed. 723, "not bound under the law to go to the expense or trouble of verifying the truth or falsity of the statements made by the vendor, and the vendor is estopped from asserting that the vendee might readily have ascertained the truth if he had examined the records of the county where the land was situated. The liability of the vendor arises from his own fraud and falsehood, and is not in any manner affected by the want of diligence upon the part of the vendee"—citing numerous cases in support of the rule stated.

The judgment is reversed, and cause remanded to the court below for a new trial.